## MALOY v. DUDEN.

(Circuit Court, S. D. New York. January 11, 1897.)

RES JUDICATA—DISSOLUTION OF PARTNERSHIP.

One D. was engaged in business in different parts of the world, under various titles, and with several associates. For some time one M. was in partnership with him at New York, under the name of D. & Co., and at the same time D. conducted business at Brussels under the name of D. & Co.; the Brussels and New York concerns having dealings with each other. The partnership between D. and M. was dissolved, and D. brought suit against M. for an accounting, in which, after a long controversy, in which all matters between them, including the dealings with the Brussels house, were thoroughly investigated, a judgment was rendered against M., which was affirmed, and finally paid by him. Subsequently he filed a bill against D., as constituting the Brussels concern, seeking to reopen the account between it and the New York house. *Held*, that the matter was res judicata.

## On Bill and Plea.

Herman Duden was, prior to 1878, engaged in the business of lace-making in different parts of the world under various titles and with several associates. There were at different times firms known as Duden & Co., of Brussels, Duden & Co., of New York, and Duden & Co., of Williamsbridge. The firm of Duden & Co., of Brussels, is the firm referred to throughout the testimony as the "Brussels firm." Prior to 1878 Maloy had been Duden's assistant and in that year he and Duden entered into an agreement whereby he became a partner in Duden's New York business under the firm name of Duden & Co. and known in the testimony as the "New York firm." This partnership expired in 1883 and a new one was thereupon entered into. The new partnership lasted until January, 1886, when it was terminated by a notice given six months prior to that date as provided for

in the partnership agreement. For some time prior to this date Duden was the sole owner of the business in Brussels, although the business was still known by the title of Duden & Co. Duden thereupon brought an action against Maloy for an accounting. A final judgment was entered in this action in the circuit court of the United States for the Eastern district of New York. The opinion of the circuit court confirming the master's report will be found in 43 Fed. 407. The judgment of the circuit court was affirmed by the circuit court of appeals. 11 C. C. A. 119, 63 Fed. 183. The defeated party, Maloy, subsequently applied to the United States supreme court for a writ of certiorari. The application was denied. 159 U. S. 258, 15 Sup. Ct. 1040. Maloy thereupon paid the judgment and costs, amounting in the aggregate to $11,041.80. Both parties introduced accounts of the Brussels firm before the master and they were examined by him. Maloy files this bill praying, inter alia, that an account be taken as between him, one of the partners of the firm of Duden & Co., of New York, and Duden & Co., of Brussels: First. Of all transactions relating to the claim and every part thereof of Duden & Co., of Brussels, and Duden & Co., of New York. Second. That said Duden & Co., of Brussels, be ordered on such accounting to make a full and true discovery under oath of all matters and things pertaining to its said demand and for that purpose that the said Duden & Co., of Brussels, produce in court its books and accounts and papers containing all transactions and entries relating to its said demand. The defendant has filed a plea alleging, first, that all of the matters in controversy are res judicata; and, second, that all of the alleged claims against the defendant are barred by the statute of limitations. The theory of the complainant is that the former action of account between the parties was not final and conclusive as between the New York and the Brussels houses and that he has a right to go over the accounts again in this action for the purpose of showing that they were incorrectly taken. The defendant, on the contrary, denies this proposition, insisting that the entire matter in controversy has been presented to and decided by this court.

William Wickham Smith and William McArthur, for complainant.

Ronald K. Brown, for defendant.

COXE, District Judge (after stating the facts). For 10 years the controversy between these parties has been the subject of bitter and uninterrupted litigation both in the state and federal courts. It is impossible to read the history of that litigation without being impressed with the fact that every matter in difference between them was involved, considered and decided. From the very nature of the controversy it is impossible that this should be otherwise.

The circuit court of appeals says in the prevailing opinion:

"The case was referred to the master 'to take and state the accounts between the parties' upon consent in writing, signed by counsel, after exceptions sustained to the answer, upon the bill, without being taken pro confesso or admitted by further answer or otherwise established. This course submitted to the master all of the issues which would be involved in taking the accounts."

It is manifest that one of these issues was the account between the New York and Brussels houses. The profits of the former could not be ascertained until it was known how much was due the latter. The Brussels house furnished goods to the New York house. The opinion says further:

"The accounts appear to be taken by the master with much painstaking care, and his conclusions appear to have been reached upon warrantable evidence, well weighed and considered by him."

The court considers the items of interest charged by the Brussels firm and concludes that the master was correct in allowing them,

for the reason that Maloy not only did not object but acquiesced in the charges. "This finding," says the court, "cannot with propriety be disturbed, and with it these charges cannot be disturbed."

Duden & Co., of Brussels, was Herman Duden, the complainant in the former action. He presented the claim of the Brussels house to the master and it was allowed. The present bill alleges that this was error, that the master's decision is a nullity, and that although the appeal from the decree sustaining his decision was unavailing, "equity should do justice between the parties now." This is precisely what equity has been endeavoring to accomplish for 10 years. The task is finished. Though the present bill is in theory against the Brussels house it is in fact for a new accounting, and this, too, after equity has found Maloy indebted to Duden on partnership account in the sum of $5,670 and after Maloy has paid the judgment. If the scheme succeeds, the complainant, who has been defeated at every stage, and who has been adjudged to have no interest whatever in the New York firm, will, by the pleasing fiction of suing Duden under the name of the Brussels firm, succeed in opening the entire controversy between them.

That the parties to this litigation are the same individuals as in the former litigation viz.: Michael F. Maloy and Herman Duden is undisputed. But it is said the parties are different because the words "as surviving partner," etc., are added to the defendant's name, and this, too, in the teeth of repeated allegations of the bill that "Duden & Co. was composed solely of Herman Duden," "was but another name for Herman Duden" and was Duden's "other self." That a settlement of the Brussels account was necessary to the determination of the former suit and that it was the subject of bitter controversy between the same two men who are parties to this action cannot be controverted. Each presented to the master a statement showing the account as he believed it to exist. Each was examined and cross-examined. The books and letters of the Brussels house were before the master in open court. If they were not examined down to the most minute detail it was only because the complainant did not deem it necessary.

An examination of the reports and decisions demonstrates that the matters regarding which most complaint is made—the interest account and the factory property—received the most careful scrutiny and painstaking consideration. Indeed, everything that could be done was apparently done by Maloy to induce the master to accept his version of the transaction, and, after the report against him, to upset the master's findings in the courts. Everything could have been done in that action which can be done in this. It is no ground for a bill like this that the complainant has discovered some new testimony or method of attack which might have been availed of with good results in the former suit. The bill instead of stating a new cause of action is little more than an assignment of errors. It contains a list of grievances and allegations, which if proved will, in the complainant's judgment, enable him to make a better showing on a second accounting. The court is not at liberty to permit a second accounting, for the reason that the controversy be-

tween these parties was tried in the former action and the decision there reached could not have been rendered without a decision of the matters alleged in this bill. To borrow a metaphor from the brief of his counsel, the complainant has taken advantage of the "chameleon-like character" of the defendant and has endeavored to introduce him to the court as a brand new party. It is, however, only necessary to remove the ineffectual disguise in which it is proposed that the parties shall masquerade in order to discover the familiar features of Maloy and Duden and the old controversy which after 10 years of strife was finally settled.

Even though the court were in doubt upon this plea the decision would be the same, because it is manifestly for the advantage of all that the question should be finally decided before the flood-gates of this accounting are again opened. The plea of res judicata is allowed.